## GREEN and Others *v.* VARDIMAN and Others.

It is a general rule that an answer in chancery is to be taken as true, unless it be disproved by two witnesses, or by one witness and corroborating circumstances.

This rule, however, does not extend to every thing which the answer contains in favour of the defendant: it applies only to that part of the answer which is directly responsive to the charges in the bill.

Matters which are set up in avoidance, and which are not responsive to the bill, must, when in issue, be proved by the defendant.

If the answer admit a fact, but rely on a distinct fact in avoidance, the defendant must prove the fact on which he relies.

*A.* and *B.* purchased jointly a land-office certificate for a tract of land, on which there were some improvements, and the assignment of the certificate was made to *A.,* who had paid more of the purchase-money than *B.* The purchasers, by a parol agreement, divided the land. By this agreement, *A.* received several acres more than *B.,* together with the improved part of the premises, and was to pay *B.* a certain sum as the difference in value of the two parts, and to assist *B.* in improving his part. Each of the parties took possession of his own part of the premises. *Held,* that the agreement was not affected, in equity, by the statute of frauds.

Nov. Term,
1830.

GREEN
v.
VARDIMAN.

Thursday,
November 4.

ERROR to the *Fayette* Circuit Court.

HOLMAN, J.—The children and heirs of *Nancy Green*, deceased, by *Daniel Green* their father and guardian, filed their bill in chancery; stating that *John Vardiman*, their grandfather, died in *Kentucky*, leaving a large estate real and personal, and leaving *Mary Vardiman*, his widow, and *John T. Vardiman*, *Peter Vardiman*, *William Vardiman*, *Morgan Vardiman*, *George W. Vardiman*, and the said *Nancy Green*, wife of the said *Daniel Green*, and *Elizabeth Wilson*, wife of *Benjamin Wilson*, his heirs; that *Mary Vardiman* and *Morgan Vardiman* administered on his estate and received the whole, including two negroes, into their possession; that, afterwards, *John T.* and *William* jointly purchased the certificate for 100 acres of land, in paying for which *John T.* paid 200 dollars for *William*, and took the certificate in his own name; that *John T.* died, leaving a large estate besides said land and said debt from *William*, before he had received his distributive share of his father's estate, leaving the remaining heirs of *John Vardiman*, deceased, his lawful heirs; that *William* and *Morgan* administered on his estate; that, before the distribution of either of said estates, *Peter Vardiman* died, leaving the remaining heirs of *John Vardiman*, deceased, his lawful heirs; that *George W. Vardiman* administered on his estate; that *Nancy Green* died, leaving the complainants her lawful heirs. All the other heirs, &c. are made defendants. The bill makes general and special charges of waste of the several estates, and of a failure to pay the complainants their distributive share. One of the special charges is, that, after the death of *John T.*, *William*, instead of accounting for the 200 dollars that *John T.* had advanced for him, set up a pretended agreement made between him and the said *John T.* in his life-time, that *John T.* should pay *William* 75 dollars for five acres of land, and also assist him to clear five acres and build a cabin on it; which contract, if any such took place, the bill charges to be void, the same not being in writing. The bill requires special answers as to the amount of each estate, and as to all the particulars of the administration item by item; not only as to what had been received, but also as to what had been paid out; including a full disclosure of all the circumstances of the supposed agreement between *John T.* and *William*.

*Mary Vardiman* and *Morgan Vardiman* pleaded, that they

had fully administered the estate of *John Vardiman*, deceased, except two negroes; that they, with the said *Daniel Green*, in the life-time of *Nancy Green*, entered into a written agreement to submit all matters, relative to *Nancy Green's* share of said estate, to arbitration; that an award was made agreeably to said submission, requiring certain payments to be made to said *Green*, which they had made and received said *Green's* acquittance; referring to the arbitration-bond, the award, and the acquittance as part of their plea; that as to the two negroes, all the heirs of the said *John Vardiman*, deceased, after they came to full age, including the said *Daniel* and *Nancy Green*, executed a power of attorney to *Morgan Vardiman*, authorising him to sell said negroes for the benefit of said heirs, which power of attorney is also made part of the plea; and that, by virtue of said power, said *Morgan* did sell said negroes. These defendants are ruled to show cause, why they should not answer the bill as to all the particulars of their administration. They show for cause, that they fully administered said estate in the state of *Kentucky*, and settled and closed all their administration accounts in a county Court in *Kentucky*, agreeably to the laws of that state. This cause was adjudged insufficient, and they are ruled to answer the bill. In their answer they set forth all the particulars of their administration, stating that they had fully paid to the said *Daniel Green*, in the life-time of *Nancy Green*, her full share of said estate.

*Morgan* and *William Vardiman* answered according to the requisitions of the bill; exhibiting, as they say, a full and minute account of the administration of the estate of *John T. Vardiman*, deceased, showing the amount that was left for distribution; of which, they allege they paid *Daniel Green* in the life-time of *Nancy Green* her full share. In answering that part of the bill that requires a disclosure of the transactions between *John T.* and *William*, they say that *John T.* paid more than his proportion of the money for the purchase of the land, and took the assignment of the certificate in his own name; that *William* afterwards made him some payments; that when they divided the land, *John T.* received about five acres more than his proportion, and also received that part on which was a spring and an improvement; that he agreed to allow *William* 75 dollars for the difference in the value of the two tracts, and also to perform

an equal part of the labour of clearing five acres on the tract allotted to *William*, and of erecting buildings thereon equal to those on his tract; that each took immediate possession of his part, and continued to exercise a quiet and undisturbed ownership over it; that *John T.* did not perform said labour, and that in their administration, they selected men, who are named in the answer, to estimate the value of the labour that *John T.* had agreed to perform; that said men estimated the value of the labour at a sum which they, in their answer, aver it was reasonably worth; that a patent for said land was not obtained during the life of *John T.*, but was issued in his name after his death.

*George W. Vardiman* answered as to his administration of the estate of *Peter Vardiman*, deceased; from which it appears that, of the personal estate, nothing was left for distribution; that *Peter* left a tract of land, of which *Daniel Green*, as guardian of the complainants, has received their proportion.

The complainants filed a general replication.

There is no answer by *Benjamin* and *Elizabeth Wilson*, nor does it appear that any measures were taken to obtain their answer. They seem to have been forgotten. We mention this circumstance by the way, not on account of the bearing it will have in this case, but on account of the inconvenience such proceedings sometimes occasion, by the final disposition of a case before all the parties are before the Court. No depositions were taken. The case was finally heard on the plea, answers, replication, and exhibits; and the Circuit Court dismissed the bill without prejudice.

By agreement of the counsel on each side, the exhibits are not copied in the record, but it is admitted of record in this Court, that they are to be taken to be just as they are alleged to be in the pleadings.

The first object in this case that presents itself for our attention, is the plea of *Mary* and *Morgan Vardiman*. This plea presents a complete bar to the complainants for any claim on the estate of *John Vardiman*, deceased. The submission to arbitration, the award, the compliance with that award, and the acquittance, all which we understand were proved by the exhibits referred to, settle all matters in controversy, except as to the negroes. The answer, that they were afterwards ruled to

make of the particulars of their administration, presents no new case; but only shows the matters that were, or might have been, in controversy before the arbitrators, and which were settled by the award. The case of the negroes rests upon different premises. Slaves in *Kentucky*, if we are correctly informed, are not strictly personal estate; and are not subject to be sold by administrators, unless for the payment of debts in the absence of personal funds. So that the administrators would not be liable for them any more than for lands, unless there was a special charge that they had disposed of them, or had refused to deliver them up to the heirs when demanded. So that the general inference to be drawn from this plea, that they had not administered these slaves, would exonerate them from the claim of the complainants. The execution of a power of attorney by the heirs, which it seems was proved by its exhibition, authorising *Morgan Vardiman* to sell these slaves, so far as it goes, shows that the heirs considered the slaves as under their control, and subject to their order; and as this is rebutted by no circumstance in the case, it must be considered as the fact. So that the further allegation, that *Morgan* took possession of the slaves and sold them for the benefit of the heirs by virtue of the power, requires no proof in order to discharge the administrators. The liability of *Morgan*, as a special trustee, for the price of these slaves is not within this case; as the bill only charges him as an administrator, and as such he is not liable. But if it should be considered that the bill was intended to charge him as a special trustee, the charge is evidently deficient; as it is not stated that he has received the price for which the slaves were sold, and failed to pay it over; or has in any other way violated said trust.

The principal question, however, presented for consideration in this case, is, how far the answer of a defendant, to which there is a replication, is to be taken as evidence of the facts stated in it? It is a general rule, that an answer is to be taken as true unless disproved by two witnesses, or by one witness and corroborating circumstances; and when the term answer is taken in its strictest sense, we believe there are no exceptions to this rule: but an answer in this sense is not what a defendant may say in his own behalf, but what he says directly responsive to the charges in the bill. Matters, however, that are set

up in avoidance, that are not responsive to the bill, when in issue, must be proved by the defendant; for if the answer admits a fact, but insists on a distinct fact in avoidance, the defendant must prove this fact. *Hart* v. *Ten Eyck*, 2 Johns. C. R. 62. On this part of the subject, there are many nice distinctions and cases that it is difficult to reconcile. An executor, in his answer to a bill by the creditors for an account of the personal estate, stated that he had received 1,100*l.*; that in making up his accounts he gave his bond for 1,000*l.*; and that the testator gave him the other 100*l.* for his trouble and pains in his business: it was held that this answer did not discharge the defendant of the 100*l.*; the gift by the testator being a fact distinct from what he was required to answer, and so in avoidance of the demand against him. Gilb. Ev. 57. S. C. cited also in Bull. N. P. 237, and in 1 Stark. Ev. 292. But it was held that if it had been one fact, as that the testator gave him 100*l.*, it ought to have been allowed. Ib. So, in *Ridgeway* v. *Darwin*, 7 Ves. 404, an executor charged by his answer, is not permitted to discharge himself by affidavits of payments made to the testator in his life-time. So a party charging himself in a schedule to his answer, cannot discharge himself in another schedule showing his disbursements. *Boardman* v. *Jackson*, 2 Ball & Beat. 385. And a party charged by his answer cannot discharge himself by it, unless the whole is stated as one transaction; as that, on a particular day, he received a sum and paid it over; not that, on a particular day, he received a sum, and on a subsequent day he paid it over. *Thompson* v. *Lambe*, 7 Ves. 587. Also, to a bill by the assignee of a note, stating that he gave a valuable consideration for the note and requiring an answer to the whole bill,—the answer, stating that the note was assigned for a usurious consideration, requires proof. *Green* v. *Hart*, 1 Johns. R. 580. There are many similar cases, which seem to render it doubtful what matters in an answer require proof, and what are supported by the answer itself; and those cases that turn on the unity of the transaction which creates a charge and discharge, are peculiarly perplexing. But we cannot conceive that any of those cases are intended as exceptions to the general rule—that the answer, so far as it is strictly such, being directly responsive to the bill, is to be taken as true. For, when the bill requires a disclosure of such matters as may

42

discharge the defendant, he is compelled to answer and disclose those matters; and if the disclosure amounts to a discharge, he is entitled to the full benefit of it. But although the bill might not require a disclosure of the matters set up in avoidance, yet if the charge and discharge arise from one indivisible transaction, and the answer sets forth that transaction, the defendant shall have the full benefit of the discharge. But, we conceive, the principal difficulty in all these cases turns on the question, what facts in the answer are responsive to the bill, and what are set up in avoidance. Such was the point on which the case of *Green* v. *Hart* and some others evidently turned. We are therefore of opinion that, when the answer is confined to such facts as are necessarily required by the bill, and those that are inseparably connected with them, forming a part of the same transaction, the answer is to be taken as true when it discharges, as well as when it charges the defendant. See a note in the index to Johns. C. Reports, 7 Vol. p. 75, as to the opinion of the Court of Errors in *Hart* v. *Ten Eyck*, connected with a remark of *Spencer*, J. on this subject in *Simson* v. *Hart*, 14 Johns. R. 63. In the case before us, the answers are directly responsive to the requirements of the bill, and are to be taken as true notwithstanding the replication.

But it must be further observed, that facts set forth in an answer and considered as true, are to be considered according to their legal import, whether they amount to a discharge or not. Hence, it becomes necessary to examine the nature of the facts thus set up by the answer. In this case, the transaction between *John T.* and *William Vardiman*, respecting the tract of land jointly purchased by them, requires attention. There is a considerable difference between the bill and answer, as to the part which each paid of the purchase-money; but the most material difference arises out of the manner in which the land was divided. The answer, which agreeably to the foregoing rule we consider as true, states that in the division of the land *John T.* received several acres more than his proportion, and also a spring and improvements; and agreed to allow *William* 75 dollars as the difference in the value of the two lots, and to perform an equal part of the labour of clearing five acres and erecting buildings on *William's* part, equal to those already erected on his own part; that each took possession of his re-

spective part, and remained in the quiet enjoyment of it. The bill states that if such an arrangement did take place, it was void by the act for preventing frauds and perjuries. But we conceive that that act is not applicable to the case: First, the agreement as to the division line, and as to the payment of the difference in value between the two lots, is not within the act. A parol agreement to abide by a division line is obligatory. *Jackson* v. *Dysling*, 2 Caines, 198. And when a tract of land held jointly by two cannot be equally divided in point of value, an agreement by one to pay the other the difference in value is not, we conceive, within the terms of the act; for the act contemplates a transfer of lands or some permanent interest in them. *Bostwick* v. *Leach*, 3 Day's Cas. 476. And a promise to pay for improvements made on land is not within the act. *Frear* v. *Hardenbergh*, 5 Johns. R. 272. So an agreement to abate in the price, what the land falls short of the number of acres named in the deed, is not within the act. *Mott* v. *Hurd*, 1 Root, 73. Secondly, the agreement to make an allowance for the difference in the quantity of land, under the peculiar circumstances of the case, is not within the act. Viewing it as a contract for the sale of land, it comes within one of the exceptions that equity has always raised to the act—a partial execution of the contract, and an execution so far as it was in the power of the parties at that time. From the manner of the original payments, it seems that *William* was indebted to *John T.* for a part of the original purchase-money. So it may be said that *John T.* had paid *William* for this land, and had received quiet possession of it. So that if *William* had held the title, *John T.* might have enforced a specific performance of the contract; or, as the title was virtually in *John T.*, if he had not paid the purchase-money, *William* could have recovered it; for an agreement to pay money in consideration of the convey-ance of land is not within the act, after the conveyance has been executed. *Chapman* v. *Allen*, Kirby, 400. But *William* had no title to the land. He had only an equitable claim, aris-ing, as far as appears, by parol—a trust, resulting from the pay-ment of the purchase-money; and such a trust has never been considered within the act. Besides, that right which originat-ed by parol may be relinquished by parol. When *John T.* agreed to allow *William* so much for the difference in the quan-

tity of land, the transaction is more in the nature of lessening *William's* claim upon him, than of a purchase of so much land. Moreover, as *John T.* held the certificate and would receive the title for the whole tract, it would be impossible for *William* to coerce a conveyance of any part of the land without showing a clear equity; and surely he could show no equity, as to the land he had thus voluntarily relinquished for a valuable consideration, either executed by payment, or executory by promise. Thus we see nothing exceptionable in this arrangement, and nothing to prevent the administrators of *John T.* from setting up a discharge of this claim of *William*, as a legal defence against so much of the complainants' demand. There are no other facts in the answers that require particular attention. And we are of opinion that they present a full answer to all the allegations of the complainants.

*Per Curiam.*—The decree is affirmed with costs.

*Smith*, for the plaintiffs.

*Rariden*, for the defendants.