*J. Ryman*, for the appellant.

---

Nash and Others *v.* Hall and Others.

Where the plaintiff grounds his right of action on a negative allegation, the establishment of which is an essential element in his case, he is bound to prove it, though negative in its terms.

ERROR to the *Switzerland* Circuit Court.

DAVISON, J.—Bill in chancery by the defendants in error against *Isaac Nash, Cyrus Betts* and *Stephen Reed*, to recover a tract of land in *Switzerland* county.

The bill states that *Benjamin Hall*, on the 19th of *May*,

1830, purchased the land in dispute from one *Cornelius Culp*, from whom he received a deed. *Hall* died in possession of the land, leaving *Martha Hall*, his widow, and the following named children and heirs at law, viz., *George Hall, John Hall, Phebe Hall, Eleanor Hall*, (since married to *Jonas Miles*) *Elizabeth Hall*, (since married to *William C. Froman*) *James Hall, Peter Hall* and *Isaac Hall. Isaac Hall* has since died, leaving *Isaac M. Hall, Martha Hall* and *James Hall*, his heirs. The said widow and heirs, *Jonas Miles* and *William C. Froman*, were the complainants.

*Stephen Reed*, one of the plaintiffs in error, brought ejectment against these heirs for the recovery of said land, and at the *October* term, 1839, of the *Switzerland* Circuit Court, obtained a judgment. They were, however, entitled to the benefits of the occupying claimant law; and, upon their application, the land was valued at 762 dollars, and the improvements at 700 dollars. *Reed* elected to take the value of the land; whereupon, the Court adjudged that the occupants pay into the clerk's office of said Court, for the use of the successful claimant, 762 dollars, within ninety days from the 20th of *April*, 1840, provided the successful claimant should, within that period, tender into said office to said occupants a deed for the land. And if, on such tender being made within said period, they should fail to pay as aforesaid, the successful claimant should have his writ of possession, &c.

The bill charges that *Reed*, the successful claimant, did not, within the time specified, tender in said office a deed for the land, nor do any other act which required the complainants, who were the occupants, to pay the said 762 dollars; that one *Robert N. Cochran*, the agent of *Reed*, on the 13th of *August*, 1840, received said money of *Martha Hall*, the widow of the decedent, and, upon the margin of the record of said judgment, executed a receipt therefor. This receipt is set forth in the bill as follows: "Received of *Martha Hall*, by the hands of *Isaac Nash*, 762 dollars, and interest, being the amount of the subjoined judgment. *August* 13, 1840. [Signed] *Robert*

*A. Cochran*, agent for *Stephen Reed.*" It is alleged that upon this payment, it became the duty of *Reed* to convey the land to the complainants; but, instead thereof, he, by his agent, conveyed it to *Nash*. The deed to *Nash* is dated *August* 13, 1840. In that year he got possession of the land. On the 17th of *July*, 1841, he conveyed it to *Cyrus Betts*, who is now in possession. *Nash* and *Betts* have received the rents, &c., which were worth 100 dollars a year. *Betts*, when he took his conveyance, had full knowledge of all the facts recited in the bill. The complainants tender back the said 762 dollars, with interest from the 13th of *August*, 1840.

The bill prays that *Nash* and *Betts*, or one of them, be compelled to receive the money, &c., and to convey the premises in question to said heirs, &c.; that an account be taken of all rents, &c., received by them; and for general relief, &c.

*Reed*, being a non-resident, was notified by publication, and, having failed to appear, was defaulted. *Nash* and *Betts* answered.

*Nash*, in his answer, avers that *Reed* executed a deed to said occupants, and, within the period specified in the judgment, deposited it for them in the said clerk's office. He alleges that they never paid the 762 dollars; that while said deed was in the clerk's office, and the time designated for the payment of that sum had expired, it was agreed between him and the said *Martha Hall*, that he should purchase the land and take a deed for it in his own right, and if she would, by the 1st of *March*, 1841, pay him 900 dollars, with 10 per centum interest from the 13th of *August*, 1840, he was to re-sell and convey the land to her. Pursuant to this agreement, *Nash* bought the land of *Reed's* agent, paid him the 762 dollars, and in addition paid her 200 dollars. He also gave her a bond, obligating himself to make her a deed for the land upon payment of the money advanced by him, with interest as aforesaid, by the said 1st of *March*, 1841. The bond is set out in his answer, and bears date *August* 13, 1840. In *April*, 1841, *Martha Hall* called on *Nash*, and informed

him that she could not comply with her contract—that

she would abandon it. He then proposed to give her 50
dollars, if she would abandon her contract and give up
possession of the premises. She accepted the proposi-
tion; the 50 dollars was paid; she removed from the land,
and he took possession of it.

The answer sets up, that the entire consideration given
by *Benjamin Hall* to *Culp* for the land in controversy,
was the conveyance of a tract of land in *Ohio* county.
At the time this tract was conveyed to *Culp*, it was worth
only 200 dollars; while in his possession, he made im-
provements on it of the value of 200 dollars. After said
recovery in ejectment, *Culp* re-conveyed said tract to the
complainants; and, besides, paid said *Martha Hall* 200
dollars. This re-conveyance and payment were made in
satisfaction of the claim of said heirs for improvements
on the land set forth in the bill. In the year 1842, the
said *Martha* took possession of the land re-conveyed by
*Culp*. She has occupied it ever since, and herself and
said heirs have received the rents, &c.

The answer of *Betts* alleges, that he is not advised as
to whether the charges in the bill are true or false. He
cannot, therefore, admit or deny them. When *Nash* pur-
chased the land, he, *Betts*, was a minor. *Nash* was his
guardian. The land was bought for him, *Betts*, and partly
with his money. He had nothing to do with the transac-
tion. He admits the conveyance to him from *Nash;* states
that he has made improvements on the land worth 700
dollars; that the land thus improved is worth 100 dollars
a year. He denies all fraud, &c.

The cause was submitted on bill, answers, exhibits and
depositions. The Court decreed that the complainants had
the right, and were thereby permitted, to redeem the pre-
mises, on payment of 1,223 dollars, that being the principal
sum, with interest from the 20th of *April*, 1840, which, by
the judgment of said Court, they were required to pay the
said *Stephen Reed;* that said sum be paid to the clerk of
the Court, within thirty days, for the use of said *Betts;*
that on payment of said sum of money, within said time,

and notice thereof to said *Betts*, he was required to quit-claim all his title, &c., to said land to the complainants; that the money, &c., paid to *Martha Hall* by *Nash*, and the improvements made by him and *Betts*, stand and be set off against the rents, &c., while the premises were in their possession, &c.

In support of this decree, it is contended that the tender of a deed to the occupants, within the period specified, was a condition precedent; that this condition never was complied with, and that hence they were not, within that period, bound to pay or tender said 762 dollars, and they still have a right to tender the money and claim the land.

It must be conceded that the money was not, within said time, paid or tendered. And the inquiry arises, Did the successful claimant tender a deed pursuant to said judgment? If this was done, he had a perfect right to sell and convey the premises.

The bill charges that *Reed*, the successful claimant, never made or tendered a deed to the occupants. But *Nash*, in his answer, avers, that such deed was executed and deposited in the clerk's office, &c. Relative to the issue thus made, the depositions furnish no proof. It, therefore, becomes necessary to inquire, whether the answer, in that respect, was evidence in the cause.

" The general rule is, that an answer directly responsive to the bill must be taken as true, unless disproved by two witnesses, or by one witness and corroborating circumstances." 2 Blackf. 324. But the complainants insist, that " the fact of tender is set up by *Nash* as a·defence, and should be proved by him; that, if it be a fact, it is within the knowledge of the defendants, and should be proved by them. It is not possible that the complainants can prove that the deed was not tendered." If the averment in the answer had been matter in avoidance merely, these positions would have been correct; but it is a direct response to a material charge in the bill. 2 Blackf. 324. The defendant was compelled to answer the charge. Had the averment amounted to an admission of the tender, it would have settled the case against him. As it

stands, it would seem that he was entitled to the benefit of it. The tender being within the defendant's knowledge, affords no reason why his answer should not be taken as true. The complainants have, in effect, made him their witness, and called on him to answer truly. This he was bound to do; and, because he knew the fact, might give his response additional weight. It is true, the burden of proof is generally on the party holding the affirmative. To this rule there are exceptions; and we think the case before us is one of them. Where the plaintiff grounds his right of action on a negative allegation, the establishment of which is an essential element in his case, he is bound to prove it, though negative in its terms. 1 Greenl. Ev., s. 78.

In this case, if the deed in question was tendered within the time prescribed, the complainants have no right to redeem. Without the charge that it was not tendered, their bill would have been substantially defective. It follows that that charge was "an essential element in the case," and it was incumbent on them to prove it.

To sustain their bill, the complainants introduced the deposition of *Jones*, the clerk of the *Switzerland* Circuit Court. He deposes merely that he had searched his office and found no deed from *Stephen Reed* to the heirs of said *Hall*. This evidence is insufficient to establish even a presumption against the answer of *Nash*. *Jones* was not clerk at the time the deed is alleged to have been in the clerk's office. It was not requisite that *Reed* should suffer it to remain there after the ninety days had expired. There is nothing in the circumstance that it was not in the office when *Jones* made the search. Therefore, it seems to us, that the answer of *Nash* is proof that a deed was tendered to the heirs of *Hall*, in accordance with the requisitions of said judgment.

This view, in our opinion, decides the case against the complainants. The contract between *Nash* and *Martha Hall* took place after the occupants had forfeited their claim to the premises. Under that contract, *Nash* ad-

vanced 762 dollars to *Reed's* agent, received a deed for the land, advanced *Martha Hall* 200 dollars, and gave her a bond obligating himself to make her a deed, on the payment of 900 dollars, with 10 per cent. interest. She failed to pay the money. The parties rescinded the contract, and *Nash* got possession of the land. The record presents nothing against the validity of these transactions. Nor does it appear that *Hall's* heirs had any interest in them, either in law or equity.

*Per Curiam.*—The decree is reversed with costs, and the proceedings subsequent to the answers set aside. Cause remanded, &c.

*J. G. Marshall* and *D. Kelso*, for the plaintiffs.

*J. Sullivan*, for the defendants.

