May Term, 1857.

9 | 132
127 | 575

PUGH
v.
PUGH.

PUGH and Others *v.* PUGH and Others.

Where a trustee buys land in his own name, and pays for it out of trust money in his hands, a Court of Equity will fasten a trust upon the land in favor of the persons beneficially entitled to the money, and the *cestui que trust* has a right to the estate.

Where a bill set up a trust, and a cross-bill alleged a purchase of an interest in the estate to which the trust attached, without notice of the trust, and issue was taken by answer, and there was no evidence touching the issue thus made,—*held,* that the cross-bill was properly dismissed.

Process must be served upon infant defendants in chancery in the same manner as upon adults.

A guardian *ad litem* cannot waive service upon an infant.

To support a decree in a case where there is an infant defendant, an answer must have been filed in his behalf.

*Thursday, May 28.*

ERROR to the *Madison* Circuit Court.

DAVISON, J.—Bill in chancery, filed in *August,* 1845, by Jacob and *Elizabeth Pugh,* who were the complainants, against the plaintiffs in error, who were the defendants. The case presented by the bill is as follows:

In the year 1833, the complainants, with their sister, *Rebecca Pugh,* appointed and fully authorized *Evan Pugh,* Sen., their father, to proceed to *Licking* county, *Ohio,* and collect from one *Aaron Baker* certain moneys then in his hands, to which they were entitled under the will of their grandfather. Pursuant to his appointment, *Evan Pugh* collected for each of the complainants 35 dollars, and for *Rebecca* a similar amount. He paid over to *Rebecca* between 25 and 30 dollars, having retained out of the moneys collected for her one-third of his traveling expenses; but to the complainants he never paid any part of the money which he received. It is alleged that, with the moneys collected for them, he, *Evan Pugh,* on the 23d of *March,* 1834, purchased in his own name, at the *United States* land office at *Indianapolis,* at Congress price, forty acres of land, situate in *Madison* county, which land is described; that said land, though entered in the name of *Evan Pugh,* Sen., was bought with the complainants' money, and for their benefit; and that, during his lifetime, he promised repeatedly to convey the forty acres to them; but he died with-

out making such conveyance. Further, it is alleged that *Evan Pugh*, at his death, which occurred in the year 1845, left *Sarah Pugh*, his widow, and, in addition to the complainants, the following named children and heirs at law, viz., *Rebecca, John, Hannah, Anne, William, Joseph, Evan, Maria, Robert,* and *Sarah Pugh.* Said widow and heirs, with *Daniel Williams,* the husband of *Rebecca, Nineveh Berry,* the husband of *Hannah, James Kendal,* the husband of *Anne,* and *William Allen,* the husband of *Maria,* were the defendants. The bill prays that the trust may be executed, &c., and for general relief, &c.

*Thomson* and wife, in their answer, admit that *Evan Pugh* received the complainants' money, as alleged in the bill, and used it in the purchase of the land in contest; but aver that they are not informed as to whether it was or was not purchased for their benefit. The other defendants, except *Robert* and *John Pugh,* answered admitting the death of *Evan Pugh;* that they are his widow and heirs at law; and that he died seized of the land; but, of all the other statements and charges contained in the bill, they allege that they are uninformed, and require proof, &c. *Robert Pugh,* being a minor, appeared by guardian *ad litem,* who waived service of process; but no answer appears to have been filed on behalf of the minor. *William Pugh* filed his cross-bill, making the complainants and *John Pugh* defendants, wherein it is alleged that he, *William,* had bought *John's* interest in the land, and received his deed without any notice whatever of the complainants' title. To the cross-bill the complainants filed their answer, verified by oath. They admit *William's* purchase from *John;* but aver that, at the time he purchased, he had full notice of their claim upon the land. *John Pugh,* having failed to appear to the original bill, was defaulted. As to the cross-bill, no process appears to have been served.

Upon final hearing, the Court dismissed the cross-bill, and decreed that the land was held by *Evan Pugh,* in his lifetime, in trust, as charged in the bill, and since his death, has been so held by the defendants, who are ordered to convey it to the complainants.

This being a suit in equity decided in the Circuit Court under the old system of procedure, the evidence is properly in the record in the form of depositions. These sufficiently prove that *Evan Pugh,* as the complainants' agent, collected their money as charged, and with the same money bought the land in question in his own name. And his admissions, to the effect that he made the purchase for their benefit, are also shown.

Having carefully examined the evidence, we are of opinion that it sustains the bill. This conclusion plainly results when it is considered that the defendants' answers are not in denial of the alleged facts.

But the appellants insist that the bill itself is insufficient; that assuming all its charges to be true, it does not make a case for relief. This position is untenable. Where a trustee buys land in his own name, and pays for it out of trust money in his hands, a *Court of Equity* will fasten a trust upon the land in favor of the persons beneficially entitled to the money, and the *cestui que trust* has a right to the estate. 2 Story's Eq. Jurisp. ss. 1210, 1211, 1260, 1261.—2 Sug. Vend. 404. How, then, stands the case before us? *Evan Pugh,* in pursuance of his authority as the complainants' agent, received their money. While in his hands it was, no doubt, held in trust for them. He was, therefore, in contemplation of law, their trustee. And having invested the money in real estate, it will, in equity, be presumed that he did so for their benefit. In the absence of any proof tending to rebut such presumption, the complainants' right to a conveyance seems to be unquestionable. *Murray* v. *Lylburn,* 2 Johns. Ch. 441.

The next inquiry relates to the dismissal of the cross-bill. That bill, it will be seen, charges that *William Pugh* had bought *John Pugh's* interest in the land and received his deed without notice of the trust; but the complainants, in their answer, allege that *William,* when he purchased, had full notice, &c. Relative to the issue thus made, the depositions furnish no proof, hence, it is insisted that the cross-bill should have been sustained; because the purchase being admitted, the complainants were bound, under

the pleadings, to prove their averment of notice. We think differently. The answer to the cross-bill does not set up matter in avoidance, merely, but is a direct response to a material charge, and is itself evidence in the case, and, unless disproved, must be taken as true. 2 Blackf. 324, 440.—4 Ind. R. 444. There being no sufficient proof in support of the cross-bill, its dismissal was not erroneous.

*May Term,*
*1857.*

There is, however, a fatal objection to the proceedings. *Robert Pugh* was a minor, and appeared by guardian *ad litem*, who, on behalf of the minor, waived service of process. This Court has often decided that "process should be served on infant defendants in the same manner as if they had been adults." 8 Blackf. 301.—2 Ind. R. 74 (1). Here, the record on its face shows that the infant was not served with process; because it avers that such service was waived by the guardian. He was not, therefore, properly before the Court. But suppose he was, the decree would still be defective, on the ground that no answer was filed on his behalf.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*J. R. Buckles* and *W. March*, for the plaintiffs.

*J. Davis*, for the defendants.

