## CIRCUMSTANCES RENDERING A DISTINCT NEGATIVE AVERMENT AND PROOF NECESSARY.

Common Pleas Court of Franklin County.

EDWARD RADEBAUGH V. CITIZENS TRUST & SAVINGS BANK.

Decided October 19, 1925.

*Nonsuit—Function of a Judge in Passing on Motion for—Where a right is Dependent on a Negative—The Truth of the Negative must be Averred and Proved by a Preponderance of the Evidence—Estoppel.*

1. In determining a motion for a nonsuit, the court will indulge in the same deductions and inferences that a jury might draw from the ultimate facts affecting one or both parties, credibility alone lying outside the judicial function at such a time.

2. Where the complaint is that plaintiff's safety deposit box was opened and certain bonds abstracted therefrom, and the contract of rental exempted the bank from liability for abstraction by a person given access to the box by plaintiff, who was furnished two keys one of which he gave to his son, it is imperative that the petition alleged the negative that the bonds were not misappropriated by the son, and it is even more important that plaintiff plead and show by affirmative evidence that it was not the son who abstracted the bonds; and, absence of these negative averments and proof affords ground for a nonsuit.

*Decision on Motion for Nonsuit.*

*C. M. Addison and O. H. Mosier,* for Plaintiff.
*John E. Sater and James A. Allen,* for Defendant.

KINKEAD, J.

The case is submitted upon a motion for judgment for nonsuit at the close of plaintiff's evidence. Defendant relies upon the contract made by the parties wherein it was expressly agreed that the bank should not be liable in case the property in the box should be misappropriated by any person deputized by the plaintiff to have access to the same. Plaintiff made written acknowledgment of receipt of two keys. The contract stipulated that the bank shall not be liable to Radebaugh in event of misappropria-

tion by the other or others or any person deputized by plaintiff, the undersigned, who signed the contract.

Plaintiff alleges that bonds of the value of $8,880 were taken from his box and that he suffered complete loss thereof. The claim is made in the petition and upon the evidence that the bank is in fact and law bound to make good the loss upon the showing made by plaintiff. The undisputed facts thus far developed is the written contract made by the parties, the deposit of the bonds in the box and the delivery of the keys to plaintiff. It is undisputed that the plaintiff's son was made a deputy, entitling him to a key, and that he signed the contract with his father; this made the son a party to the contract. It is also undisputed that upon the disappearance of the bonds, the father, plaintiff, made claim to the son that he was the only other person who had a key to the box, and that he thereupon accused the son of having taken the bonds. It is also undisputed that the son testified on behalf of his father in this case that he never had a key to his box although the evidence disclosed that the son was present with his father and assisted him in clipping the bonds, cashing them and making the purchase of a small bond for him and in placing it in the box. The contract acknowledges receipt of two keys, the one for the father and the clear inference being that the other was for the deputy, the son, which is the sole purpose of the contract signed by father and son; that is, the sole purpose of plaintiff in the appointment of his son as deputy and of his becoming a party to the contract by his signature with his father. We have the undisputed contract and the signatures and the assertion by the father that the son was the only other person who had a key and the qualified denial by the son that he never saw the key.

It will be helpful to take note of some practical phases of evidence and of the judicial system of investigating and consideration thereof. One must have an understanding of the nature and character of the rules of evidence. It

is a set of rules and principles designed to aid judicial investigation of questions of fact, controverted questions, also inferences properly arising from undisputed or conceded facts. It is a common experience in judicial procedure that in proof of a fact or set of facts there is presented to the senses of the tribunal, facts which may furnish a basis or ground for inference and deduction in the act of furnishing and receiving evidence. It may present or bring to the tribunal a tangible basis for reasoning, deduction and inference, all of which lies within the realm of evidence.

There is ever present the legal element of reason and deduction which is an inherent part of all rational systems of proof accompanying all facts disclosed and processes of thought, having to do with the exercise of determination and conclusion upon probative process and development of ultimate fact. The present problem has to do with the judicial function upon undisputed evidence upon motion for nonsuit. In arriving at the ultimate fact to which the law affixes legal consequences the judicial function, embracing the judge in the first instance, and finally judge and jury, is to ascertain the ultimate operative facts by considering the evidential ones, the unknown from the known. In the exercise of this process a judicial tribunal must use, apply, reflect upon, and compare the general body of facts and ideas which are in its possession.

The judicial function, the court, composed of a judge and jury, or judge, is that of scrutinizing the material which the evidence comprehends, the duty being to observe its implication, the effect of one part on another, comparing and inferring, drawing inferences, all of which lies within the realm or scope of the evidence.

The whole process of legal argumentation, deduction and reasoning attached to or involved in determining upon the final or ultimate conclusion by court and jury involves and comprehends a process of logical deduction, conclusion by verdict or judgment,

So, in the exercise of the exclusive judicial function of deciding a motion for nonsuit, there is a liberal indulgement in the process of the same deduction and inferences the jury may eventually draw.

Therefore, all legitimate inferences and deductions may be brought within the realm of the ultimate facts which process may reach out in two directions affecting either one or both parties.

Of course, credibility lies outside the function of the judge, all the testimony is considered though not in respect to its credibility, the same being accepted at its probable worth by the judge assuming its credibility.  So, assuming the probable existence of all claimed facts we have everything before us and therefore undertake the task of deciding whether the motion for nonsuit should be sustained or overruled.

There is some conflict of testimony, but the evidence as to the contract and its terms is undisputed.  Plaintiff's son states that he never had a key, the language is significant, whereas the contract between plaintiff and the bank tends to show that the son did have a key, the father says he did, accused the son of taking the bonds; told his son that he had a key and that no one but him could have opened the box.  The son made no specific denials of all that appears against him; he merely says that he did not have a key. The provisions of the contract, the statements and accusations by his father, the lawsuit brought by the father all reflect upon the integrity of the son, with which the court is not concerned.

A rehersal of all these matters which are more familiar to counsel than to the court, have material bearing upon the motion submitted.  It appears that there is conflict or contention between the parties in some particulars, whereas the written contract made by the parties and deductions therefrom and inferences from undisputed conditions and fact are beyond dispute.

The question raised by the bank has to do with its lia-

bility, the complaint merely alleging that "some person or persons other than the plaintiff unlocked and opened said safety deposit box and abstracted and took therefrom, and deprived plaintiff of all of said bonds."

This is the ground of plaintiff's contention.

The facts alleged disclose the contract of rental only in a general way; it sets out the facts concerning the nature of the safety deposit box department. Plaintiff does not plead the whole contract.

The petition fails to bring the case within the terms of the contract which expressly relieves the bank from liability for misappropriation of the contents of the box by a person deputized by plaintiff to have access to the box. It is not apparently satisfactory, that is, it fails to expressly negative the express contractual limitations of the contract—"that the bank shall not be liable in the event of property contained in said box being misappropriated by any person or persons deputized by the undersigned to have access to the same."

Not only was it necessary that the petition should allege in the negative that the property was not misappropriated by the son, J. S. Radebaugh, in order to state a cause of action, but it was equally imperative, if not more so, to affirmatively plead and show by affirmative evidence, that J. S. Radebaugh, not merely did not have a key, or that he never had a key, but, on the contrary, it was incumbent on plaintiff, to affirmatively prove that the son, J. S. Radebaugh, did not misappropriate the bonds. This was made necessary by the express limitations of the contract between plaintiff and bank which contained the express limitations that the bank should "not be liable in the event of property contained in said box being misappropriated by any persons deputized by Edward Radebaugh to have access to the same."

The liability stated more fully was "that the bank shall not be liable to the undersigned (Edward Radebaugh) in the event of the misappropriation of property belonging to any persons deputized by the undersigned," etc.

The following provision contained in the same clause is of significant importance and relevancy, referring to the above quoted portion, viz.: "The above constitutes a separate rental of said safe deposit box to each person signing below, and anyone of the undersigned, or any person or persons or either of them, shall have access to the same, free from liability on the part of the bank for misappropriation as above."

J. S. Radebaugh, the son, became and was a tenant in the box with his father; that was the legal effect of the contract. The exemptions of the contract were legally within the rights and power of the parties to make.

The petition not only failed to make the necessary negative averments in order to state a cause of action, but plaintiff furthermore failed to make the necessary negative averments in order to bring the cause within the express limitations of the contract. Not only did plaintiff fail to state facts sufficient to constitute a cause of action, but the evidence introduced failed to measure up to the legal requirements.

The court took special notice of the testimony of J. S. Radebaugh, the son. He was merely asked whether he had a key to the box; he answered that he did not; he stated that he knew nothing about them—the keys; that he would give a world to find them.

This slight and unsatisfactory testimony fails to meet squarely the requirements of a cause legally stated or proved.

In the first place—a distinct negation was essential to state a cause of action, that is, ultimate facts in negation.

"A negative allegation is to be made and proved where it constitutes a part of the original substantive cause of action upon which the plaintiff relies (and must rely to state a cause of action), and this is an exception to the general rule that a party is not called upon to prove his negative averments, although they may be necessary in his pleading." *Dirks* v. *California Safe Deposit Company*, 136 Cal., 84.

"A negative condition is one where the thing which is the subject of it must happen or be complied with." I Bouvier Inst. notes, 751.

Quoting further—A positive condition, is:
"One in which the thing which is the subject of it and which must happen." Bouvier's Law Dict., 2634.

The testimony of plaintiff's son is merely negative; he stated that he did not have a key to the box; that he knew nothing about the keys; that he would give a world to find them.

It appears that the father—the plaintiff—not only accused the son of the plaintiff of taking the bonds, but that he brought suit against him and testified against him. The father stated to the son that he was the only other person who had a key besides himself; that he would not stand for it, etc. The father in the present action testified that the bonds were gone, and puts it up to the court and jury without definite theory of claim other than before quoted, namely, that someone unlocked and opened the box and abstracted the bonds.

It is thus apparent that plaintiff not only has no definite theory against the bank but that the clear theory is "shooting without any aim"—"some person other than plaintiff unlocked and abstracted the bonds."

Plaintiff makes no effort to found his alleged cause upon any definite theory nor does he pay the least attention to the statute which is the sole key and guide.

The first thought concerning the theory of this alleged cause was that plaintiff should undertake the task of declaring and proving a negative. As I say, this was the first thought and so it is the ultimate conclusion.

Negative propositions are generally more difficult of proof than the affirmative.

The general rule deducible from the authorities may be thus stated:

"Whoever asserts a right dependent for its existence upon a negative, must establish the truth of the negative

by a preponderance of the evidence. This must be the rule, or it must follow that rights, of which a negative forms an essential element, may be enforced without proof. This conclusion would be both illogical and unjust, and we are therefore authorized to infer the truth of its converse. Confusion has arisen from statements loosely made by text writers, and sometimes by courts, but it will be found upon examination, that whenever the question has been directly presented and considered with care, it has been uniformly held that wherever the petitioner's right depends upon the truth of a negative, upon him is cast the *onus probandi*, except in cases where the matter is peculiarly within the knowledge of the adverse party." *Goodwin* v. *Smith*, 72 Ind., 113; 37 Am. Rep., 144 (1880).

In *Nash* v. *Hall*, 4 Ind., 444, it was said:

"Where the plaintiff grounds his right of action on a negative allegation, the establishment of which is an essential element in his case, he is bound to prove it, though negative in its terms."

Wharton on Evidence (an old edition), Section 356, states:

"He who in a court of justice undertakes to establish a claim against another must produce the proof necessary to make good his contention. This proof may be either affirmative or negative. Whatever it is, it must be produced by the party who forensically must either estabish or defeat a claim."

Lord Abinger set down the law upon a like question:

"Looking at these things according to common sense we should consider what is the substantive fact to be made out, and on whom it lies to make it out." *Soward* v. *Leggett*, 7 C. & P., 613.

In plaintiff's action against his son the basic ground thereof was founded upon a theory consistent with the terms of the written contract in one particular, but inconsistent with it in another material respect. Though unfamiliar with the contents of the petition in the action against the son it is apparent that plaintiff in this case relied upon the contract made with the bank in so far as

its provisions are referable to the two keys conferring power upon the son to have a key. Reinforcing this view is the admission of the plaintiff that in his case against his son he had given testimony that he had made the statement and accusation against the son that he (the son) was the only person who had a key besides himself—saying also "I won't stand for it."

That admission brings into the evidence in this case the fact that plaintiff sued his son and failed of recovery, but more particularly brings to the judicial cognizance an entirely different theory and against a different person. We have the plaintiff on record as admitting that he insisted that the son had one key, which is consistent with the terms and conditions of his written contract with the bank, but wholly at variance with his present attitude in asserting that the bank is liable.

We have here some quotations on estoppel. I will read it. I want the stenographer to take it.

In 11 Cyc., page 796, it is stated that:

"A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings is estopped to assume a position inconsistent therewith to the prejudice of the adverse party." *Taylor* v. *Crook*, 136 Ala., 354; 96 Am. St., 27.

In Tennessee the rule has been laid down that a party is estopped to contradict his sworn statement made in a former trial, unless the statement was made through inadvertance, ignorance or mistake. *Nelson* v. *Claybrooke*, 4 Lea., 687; *Hamilton* v. *Zimmerman*, 5 Sneed, 40, 16 Cyc., 801.

Plaintiff wholly fails to bring himself within the terms of the contract made by them. The contract between plaintiff and bank was made pursuant to Section 710-2, General Code.

The contract fixed the rights and liabilities of the parties by the following agreement:

"The responsibility of the bank with regard to property deposited in rented safes is limited to the diligent and

faithful performance of their duty by the officers and employees of the bank to prevent the opening of said safe by any person other than the lessee or his duly authorized representative or representatives, and is assumed upon the express agreement that such opening shall not be inferable from proof of partial or total loss of the contents."

The exemption clause contained in the contract between bank and plaintiff provided:

"The responsibility of the bank with regard to property deposited in rented boxes is limited to the diligent and faithful performance of their duty by the officers and employees of the bank to prevent the opening of said safe by any person other than his duly authorized representative or representatives, and is assumed upon the express agreement that such opening shall not be inferable from proof of partial or total loss of the contents."

The purport, intent and effect of this contract is to qualify and limit the liability of the bank as a bailee. It limits the duty of the bank to the requirement and duty of its own officers and employees to the diligent and faithful performance of their duty. To do and prevent what? To prevent the opening of said safe. By whom? By any person other than the lessee, or his duly authorized representative or representatives.

The obligation and duty is assumed upon the express agreement that such opening shall not be inferable from proof of partial or total loss of contents.

The pleader has used a shot gun and not a rifle which should strike the heart of any cause warranted by the statute. The load in the gun, the petition, was designed to scatter and not to go straight to the gist of the cause, namely:

"Some other person or persons other than the plaintiff, without plaintiff's knowledge or consent," the averment of the petition.

Plaintiff not only "shot in the dark" figuratively speaking, but also without definite aim and theory as the law requires.

Every petition must have a definite, precise theory, otherwise it is demurrable. The petition is not founded upon a sound, definite, consistent theory.

Upon the petition and the evidence, the jury, if allowed to do so, could speculate, and could find that the officers were derelict because the bonds disappeared, hence, the bank must be liable upon the theory that "some person or persons other than plaintiff, without plaintiff's knowledge or consent, unlocked and opened said safety box and abstracted and took therefrom, and deprived plaintiff of all of said bonds," the allegations of the petition.

Plaintiff in his first petition adopted a clear, definite theory based on the contract and within the clear scope of the statute and contract; he aimed straight at the son of plaintiff, who was named as deputy in the contract; he accused the son of taking the bonds because being the deputy the inference from all the evidence is that he had the only other key. It is rational to assume that the father testified in the suit against the son that he had the only key; that would be natural because the contract would so indicate.

It seems to the court that it would be a gross mistake not to sustain the motion for judgment for nonsuit.

The petition apparently has a theory, but it is not a definite and clear one as the law requires; it would be a flagrant abuse of the well defined legal theory required in pleading, and therefore fails to state a cause of action.

For the reasons stated, neither the petition states a cause of action nor does the evidence disclose sufficient facts to support a verdict or a judgment in favor of the plaintiff.

The conclusion is that the plaintiff fails to prove facts sufficient to warrant the court in submitting the case to the jury.

Therefore, the motion for judgment on nonsuit is sustained and the jury is discharged and the action is ordered dismissed.